**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE**

**CIVIL ACTION NO. 05-262-DLB**

**JERRY D. RILEY**                                                                                                **PLAINTIFF**

vs.                                             **MEMORANDUM OPINION & ORDER**

**JO ANNE B. BARNHART, Commissioner
SOCIAL SECURITY ADMINISTRATION**                                                 **DEFENDANT**

*******************

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and for the reasons set forth herein, hereby reverses and remands the decision of the Commissioner.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Jerry D. Riley filed an application for Supplemental Security Income (SSI) payments on March 19, 2003. (Tr. 426-28, 434-41) Plaintiff alleges he became disabled on October 17, 1994, due to anxiety and nerves, lower back herniation and bulging disks, headaches, arthritis, ulcers, memory and concentration problems, and an inability to bend, lift, or push/pull. (Tr. 435, 463)[1] Plaintiff's current claim was denied initially (tr. 403-06) and

---

[1] Plaintiff filed a prior SSI application in October of 1994. After proceeding through an administrative hearing, a decision in his favor was issued by the administrative law judge (ALJ) on May 16, 1996. (Tr. 207-18) Plaintiff was found to be disabled due to anxiety disorders. In conjunction with that decision, the ALJ recommended a medical review within three years, and so a Continuing Disability Review was conducted in July of 1999. (Tr. 226-29) At that time it was determined that Plaintiff had shown medical improvement. This finding was upheld at the subsequent review level. (Tr. 238-52) After a hearing was held on Plaintiff's challenge to that determination, an unfavorable decision was issued July 23, 2001. (Tr. 390-97)

on reconsideration (tr. 410-12).  Plaintiff requested a hearing before an ALJ, which was held on April 7, 2004 in Prestonsburg, Kentucky. (Tr. 39-62) After that initial hearing, a psychological consultative evaluation was ordered and then a further hearing was held on January 7, 2005, in Prestonsburg, Kentucky.  (Tr. 63-79)  On March 25, 2005, ALJ Gitlow ruled that Plaintiff was not entitled to SSI payments. (Tr. 17-26)  This decision became the final decision of the Commissioner when the Appeals Council denied review on June 16, 2005. (Tr. 9-11)

On August 17, 2005, Plaintiff filed the instant action.  The matter has culminated in cross motions for summary judgment, which are now ripe for review.

## II.  DISCUSSION

**A.     Overview of the Process**

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Secretary of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*  Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations.  *See id.*  Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently.  *See Her v. Comm'r of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis.  Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of

the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform.  As to the last step, the burden of proof shifts from the claimant to the Commissioner.  *See Jones v. Comm'r of Social Security,* 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.     The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his March 19, 2003, date of application. (Tr. 18)  At Steps 2 and 3, the ALJ found Plaintiff's degenerative disc disease of the spine, arthritis of the right ankle, decreased visual acuity, and polysubstance abuse to be severe impairments. (Tr. 18-19) However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments severe enough to meet or medically equal any listed impairment in Appendix 1, Subpart P, Regulation No. 4. (Tr. 20)

At Step 4, the ALJ found that Plaintiff retains the residual functional capacity (RFC) to lift and/or carry 25 pounds occasionally and 20 pounds frequently, and can push/pull to these weight limits.  The ALJ also found that he could stand/walk for up to six hours per day, two hours without interruption; and sit for up to six hours per day, two to three hours without interruption.  He can occasionally climb, stoop, kneel or crawl, but should not crouch or climb ladders, ropes or scaffolds.  He must also avoid exposure to vibration and work requiring depth perception or peripheral vision to the right.  Finally, the ALJ noted that

despite having his high school equivalency diploma, Plaintiff reads at a seventh grade level. (Tr. 22)

The ALJ determined that, given his RFC, Plaintiff could not return to his past relevant work as a coal truck driver. (*Id.*) The ALJ therefore proceeded to the final step of the sequential evaluation. At Step 5, the ALJ found that there were a significant number of jobs available to Plaintiff in both the national and regional economies despite his limitations. (Tr. 24) This conclusion resulted from testimony by a vocational expert (VE), in response to a hypothetical question assuming an individual of Plaintiff's age (40 at the time of the most-recent hearing and so a "younger" individual), education (high school equivalency diploma), past relevant work experience and training as a coal truck driver (heavy and unskilled), and RFC. (Tr. 71-78) The VE testified that Plaintiff could obtain employment at the medium exertional level as a kitchen worker or cleaner; at the light level as a watch guard/gatekeeper or machine tender; and at the sedentary level as a general production inspector or marker. (*Id.*) Since these were positions of significant number in both the regional and national economies, the ALJ concluded Plaintiff was not disabled under the Social Security Act. (Tr. 25)

**C.  Analysis**

Plaintiff's motion raises an assortment of alleged errors by the ALJ. He contends the ALJ failed to recognize that his claim meets the listings of 12.04, 12.05, and 12.06.[2] The "Statement of Issues" section of Plaintiff's memorandum also indicates that he

---

[2]Plaintiff's listing arguments are scattered and inconsistent. Although he points to these three listings as applicable to him, his memorandum lacks any organized, formal presentation and analysis of the record evidence in support of each of these listings.

4

challenges the Appeals Council's refusal to review the claim under 20 C.F.R. § 416.1470, yet there is no further presentation of this point in the argument of his memorandum. Finally, Plaintiff challenges that the ALJ's consideration of his treating source opinions did not comply with 20 C.F.R. § 416.927.[3] Plaintiff asks that he be awarded benefits or, if the Court is not convinced that benefits should be awarded outright, that his claim be remanded for further proceedings.

The Commissioner's response is two-fold. First, she points out that the VE who testified at the hearing was presented with various hypotheticals, including hypotheticals with limitations posed by Plaintiff's treating sources. In response to these hypotheticals, the VE was still able to offer examples of work available in significant numbers in the economy, thus providing substantial evidence supporting the ALJ's decision. Second, the Commissioner discusses the requirements for each of the sought-after listings and submits that Plaintiff has failed to carry his burden of establishing these listings.

*Plaintiff's Physical Impairments*

Although not articulated by Plaintiff in the clearest of terms, the substance of at least part of his challenge to the ALJ's decision rests upon the manner in which the ALJ addressed the mental impairment and treating physician evidence. The medical evidence compiled in conjunction with this most-recent SSI application includes the care and treatment records of Dr. Jackie Briggs. (*See* Ex. C-1, tr. 467-68, treatment notes from March 11 to March 25, 2003; Ex. C-12, tr. 512-16, treatment notes from January 22, 2003,

---

[3]Plaintiff also cites to 20 C.F.R. § 416.1477 in conjunction with this argument. This regulation is directed to remands by the Appeals Council, and Plaintiff's reliance upon and application of this regulation to his "treating source opinion" argument is unclear.

to October 28, 2004; and Ex. C-13, tr. 517-31, treatment notes from July 12, 2003, to December 12, 2004). The record also contains a medical report of Dr. Briggs dated April 9, 2004. (Ex. C-14, tr. 532-37)[4]

Jackie Briggs is a doctor of osteopathy. As such, he is an accepted medical source to provide evidence establishing impairment. *See* 20 C.F.R. § 416.913(a)(1). The ALJ makes little reference to Dr. Briggs' medical treatment history of Plaintiff, aside from noting that Dr. Briggs prescribes Plaintiff Klonopin (tr. 18); and that in an office visit of March, 2003 Dr. Briggs noted Plaintiff to have a positive straight leg raise (tr. 19). There is no other discussion in the decision about Dr. Briggs' course of treatment and findings, including a CT scan of the lumbar spine. (Tr. 516)

In determining Plaintiff's physical RFC, the ALJ emphasizes the negative straight-leg raise noted by consultant Dr. Stephen Nutter at his August 4, 2004, examination. (Tr. 19) After noting the physical limitation assessments of Dr. Stephen Nutter (tr. 21 and Ex. C-8) and Dr. Briggs (tr. 22 and Ex. C-14), it appears the ALJ adopted opinions from each in formulating Plaintiff's RFC. Although the ALJ describes this RFC as being "[c]onsistent with the medical evidence of record," he elaborates no further in his decision as to why some opinions and findings of Dr. Briggs were rejected. For example, the ALJ concluded Plaintiff could lift and/or carry 25 pounds occasionally and 20 pounds frequently, while Dr. Briggs opined Plaintiff was limited to 20 pounds occasionally and 10 pounds frequently.

---

[4]The Commissioner indicates Dr. Briggs' medical assessment is undated, although the claim record lists the medical assessment as part and parcel of the April 9, 2004, medical report of Dr. Briggs. (Tr. 6, 532-37) Whether there is some discrepancy or confusion with the date of this medical assessment is not indicated in the List of Exhibits nor addressed by the ALJ.

The general rule is that "the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim." *Hall v. Bowen,* 837 F.2d 272, 276 (6th Cir. 1988)(citations omitted).  An ALJ must give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004).  If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors in determining what weight to give the opinion; namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source.  *Id.*  The applicable regulation also contains a clear procedural requirement: "We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion."  20 C.F.R. § 416.927(d)(2).  A Social Security Ruling explains that, pursuant to this provision, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (1996).

The ALJ's decision in this case with respect to Plaintiff's physical RFC suffers from many of the same infirmities that mandated reversal in *Wilson*.  For example, the ALJ failed to clarify whether Dr. Briggs' opinions were not "well-supported by medically acceptable

7

clinical and laboratory diagnostic techniques" or were "inconsistent with the other substantial evidence in [the] case record," 20 C.F.R. § 416.927(d)(2), and did not explain his application of the factors listed in § 404.927(d) to determine how much weight, if any, should be given to Dr. Briggs' opinion. *Wilson*, 378 F.3d at 546.

### *Plaintiff's Mental Impairments*

Plaintiff also points to Dr. Briggs' treatment and other medical records as evidence supportive of his nonphysical conditions; that is, his nervousness, depression, and anxiety. Plaintiff challenges the ALJ's review and assessment of this evidence. In reviewing the evidence of any mental impairments, the ALJ noted that Dr. Stuart Cooke performed a psychological evaluation on August 4, 2004. (Tr. 18) Dr. Cooke's diagnostic impression was that Plaintiff has panic disorder with agoraphobia, adjustment disorder with depressed mood, and borderline intellectual functioning. He further opined that Plaintiff has a fair ability to understand, retain and follow instructions, a fair ability to sustain attention to perform simple, repetitive tasks, poor ability to relate to the public, and poor ability to tolerate the stress and pressures associated with day-to-day work if he has to deal with the public. (Tr. 503-09) Plaintiff was also evaluated, at his own initiative, by Dr. Brad Adkins. (Tr. 22) Dr. Adkins' diagnostic impression was that Plaintiff suffers from major depressive disorder, single episode, severe without psychotic features; panic disorder with agoraphobia; pain disorder associated with both psychological factors and a general medical condition; and borderline intellectual functioning. He further opined that Plaintiff would have fair ability to follow work rules, use judgment, and maintain personal appearance; poor ability to relate to co-workers, interact with supervisors, function independently, and maintain attention/concentration; poor ability to understand, remember,

and carry out complex job instructions; poor ability to understand, remember, and carry out detailed job instructions, or to behave in an emotionally stable manner, and relate predictably in social situation; and no ability to deal with the public, deal with work stresses, and relate predictably in social situations. (Tr. 539-45) The ALJ remarked that Plaintiff is not currently in counseling for any mental disorders. (Tr. 20) However, the record contains a clinician's form from Mountain Comprehensive Care Center dated May 5, 2004, that reflects Plaintiff was scheduled to see a therapist. (Tr. 538)  Plaintiff also testified at the most-recent hearing that he had been to Mountain Comprehensive Care Center twice, with an upcoming appointment. (Tr. 69)

In his decision, the ALJ imposed no restrictions or limitations associated with Plaintiff's nerves, depression, or anxiety (the conditions as expressed by Plaintiff) or the DSM III diagnoses noted by Drs. Cooke or Adkins.  The ALJ concluded that none of this should be considered in the context of Plaintiff's disability determination.  According to the ALJ, this conclusion is dictated by the fact that Plaintiff has a severe and continuing impairment of polysubstance abuse (tr. 18), that he has been without any significant period of sobriety (*id.*), that Plaintiff did not meet his burden of showing a discrete, non-substance induced mental disorder (tr. 19), and consequently that he "has no medically determinable mental impairment (apart from his substance abuse)" (*id.*).  However, this procedure applied by the ALJ, with its resulting premature discrediting of mental impairment evidence, amounts to reversible legal error.

Current Social Security law provides that drug addiction and alcoholism may not be a contributing factor material to a finding of disability.  *See* 42 U.S.C. § 423(d)(2)(C) ("An individual shall not be considered to be disabled for purposes of this subchapter if

9

alcoholism or drug addiction would (but for this subchapter) be a contributing factor material to the Commissioner's determination that the individual is disabled."). This standard is executed by the Social Security Administration by way of regulation, namely 20 C.F.R. § 416.935. Subsection (a) requires that

> [i]f we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability[.]

*Id.* § 416.935(a). This regulation means that "[a] finding of disability is, in effect, a 'condition precedent' to applying the special rule on alcoholism and drug addiction." *Brueggemann v. Barnhart,* 348 F.3d 689, 693 (8th Cir. 2003)(quoting Frank S. Bloch, *Bloch on Social Security* § 3.39 (2003)).

The error by the ALJ in processing Plaintiff Riley's disability claim is similar to that by the ALJ in *Brueggemann*. The ALJ in that case, in formulating the claimant's RFC, rejected treating physician opinion evidence that claimant had no useful ability to handle stress. The ALJ found that any such limitation was a consequent effect of claimant's drug and alcohol abuse and therefore impermissible evidence as a basis for disability. *Id.* at 692-93. The ALJ then presented a hypothetical to the VE that was based upon this more restricted RFC. *Id.* at 693. The Eighth Circuit held that the ALJ erred in his application of 20 C.F.R. § 404.1535, the parallel statute applied in disability claims:

> The plain text of the relevant regulation requires the ALJ first to determine whether Brueggemann is disabled. 20 C.F.R. § 404.1535(a) (*"If we find that you are disabled* and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability." (emphasis added)). The ALJ must reach this determination initially, . . . using the standard five-step approach described in 20 C.F.R. § 404.1520 without segregating out any effects that might be due to substance use disorders. . . . The ALJ must base this disability determination on substantial evidence

10

> of Brueggemann's medical limitations without deductions for the assumed effects of substance use disorders. The inquiry here concerns strictly symptoms, not causes, and the rules for how to weigh evidence of symptoms remain well established. Substance use disorders are simply not among the evidentiary factors our precedents and the regulations identify as probative when an ALJ evaluates a physician's expert opinion in the initial determination of the claimant's disability.

*Brueggemann,* 348 F.3d at 694 (citations and footnote omitted).

The ALJ's consideration of the evidence in this case suffers from the same fatal flaw as did the ALJ's in *Brueggemann.* Here, ALJ Gitlow rejected any and all evidence relating to a mental impairment because he determined Riley has a severe and continuing impairment of polysubstance abuse and, therefore, that no diagnosis of a non-substance induced mental disorder was possible. (Tr. 18-19) In other words, he rejected any evidence of mental conditions or disorders and limitations or restrictions arising therefrom in the course of applying the five-step sequential analysis, rather than first including this evidence in the initial determination of whether Riley was disabled as explained in *Brueggemann.*

The *Brueggemann* court went on to explain the required analysis as follows:

> If the gross total of a claimant's limitations, including the effects of substance use disorders, suffices to show disability, then the ALJ must next consider which limitations would remain when the effects of the substance use disorders are absent. . . . We have previously noted that when the claimant is actively abusing alcohol or drugs, this determination will necessarily be hypothetical and therefore more difficult than the same task when the claimant has stopped. . . . Even though the task is difficult, the ALJ must develop a full and fair record and support his conclusion with substantial evidence on this point just as he would on any other.
>
> Only after the ALJ has made an initial determination 1) that Brueggemann is disabled, 2) that drug or alcohol use is a concern, and 3) that substantial evidence on the record shows what limitations would remain in the absence of alcoholism or drug addiction, may he then reach a conclusion on whether Brueggemann's substance use disorders are a contributing factor material to the determination of disability. If this process proves indeterminate, an award of benefits must follow.

*Id.* at 694-95 (citations and footnote omitted).

Applying *Brueggemann* standard to the instant matter, this standard as explained in *Brueggemann*, the ALJ therefore erred as a matter of law when he failed to first consider whether Plaintiff was disabled based upon all limitations as shown by credible evidence, including those that were the result of his polysubstance abuse. Only if disability is then established should the ALJ turn to consideration of whether there is medical evidence of drug or alcohol addiction.[5] Such addiction is a contributing material factor to disability if substantial evidence shows what limitations remain despite the addiction and these limitations do not establish disability.

***Harmless Error Analysis***

The Commissioner's memorandum suggests that the ALJ's failure to impose limitations as a result of some mental impairment would be harmless error. She points out that the ALJ posed to the VE a hypothetical that did, in fact, include the opinions of Dr. Stuart Cooke as to mental limitations, yet the VE testified there would be no significant impact on the jobs identified as available to Plaintiff. (Tr. 76-77) But this cannot be considered harmless. What the record would have consisted of had the ALJ conducted the required sequential analysis, including weighing of the mental impairment evidence, and then examined what medical evidence of drug and alcohol abuse existed and what

---

[5] Although the procedure applied by the ALJ to consider Plaintiff's mental impairments necessitates remand, the ALJ's finding of polysubstance abuse with no period of sobriety deserves comment. The ALJ does not point out or discuss any *medical* evidence that Plaintiff is actively abusing drugs or alcohol. Rather, he notes only that "there is nothing in the medical evidence of record to show the claimant has had any significant period of sobriety." (Tr. 18) This suggests a presumption that Plaintiff is already actively using, without pointing out any such medical opinion or conclusion in the more recent medical treatment and evaluation records.

limitations remained in the absence of such as shown by substantial evidence, is simply too speculative to make a harmless error finding. Moreover, the hypothetical posed by the ALJ containing the mental limitations assessed by Dr. Cooke was given to the VE as a supplement to the prior hypothetical incorporating Plaintiff's physical RFC. But as discussed above, doubt is cast on the ALJ's physical RFC findings in light of his failure to explain his consideration of the treating physician opinions of Dr. Jackie Briggs.

### III.  CONCLUSION

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found not to be supported by substantial evidence and is hereby **REVERSED,** with this action **REMANDED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. #13) is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #12) is hereby **GRANTED.**

A Judgment reversing and remanding this matter will be entered contemporaneously herewith.

Dated this 21st day of August, 2006.



Signed By:
*David L. Bunning*   DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\7-05-262-Riley.MOO.wpd